NOWLIN et ux. v. DENTON COUNTY.

No. 14821.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 28, 1947.

Rehearing Denied April 4, 1947.

Earl L. Coleman, of Denton, for appellants.

W. K. Baldridge and Rogers Teel, both of Denton, for appellee.

McDONALD, Chief Justice.

This is a condemnation proceeding in which Denton County seeks to condemn approximately five acres of land for highway purposes out of a 93 acre tract of land owned by appellants. The judgment of the court below orders the five acres condemned and awards judgment to appellants for $650 for the land actually taken. No complaint is made on appeal of this portion of the judgment. In response to special issues the jury found that the value of the remaining land before the taking was $9,768 and that the value after was $10,327. The landowners have appealed, presenting seven points of error.

Under the first point it is charged that there is no evidence to support the two findings of the jury just quoted. Considered in the light of their arguments made under the point of error, it is apparent that appellants do not complain of the lack of evidence to support the two findings, if taken separately, but complain of the fact that the jury found in effect that their land was worth more after the taking than it was before, or, perhaps more accurately stated, they complain of the fact that the jury did not find that the 88 acres remaining after the taking was damaged by the taking.

■ Under the rules of damages applicable to cases of this kind, appellants were entitled to recover the value of the land actually taken, and were also entitled to recover damages resulting to the remainder of their land, the measure of damages being governed by the provisions of Article 3265, Revised Civil Statutes. Sections 3 and 4 of that Article read as follows:

"3. When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution and shall assess the damages accordingly.

"4. In estimating either the injuries or benefits, as provided in the preceding article, such injuries or benefits which the owner sustains or receives in common with the community generally and which are not peculiar to him and connected with his ownership, use and enjoyment, of the par-

ticular parcel of land, shall not be considered by the commissioners in making their estimate."

Appellants' contention is, to quote from their first point of error, "that the uncontradicted evidence showed by all the witnesses, including those of appellee, that the taking of the land over and across appellants' farm and the construction of a road thereon reduced the market value of said property in that it cut said farm into two parts of unequal sizes, cutting off the pasture from the improvements and well, that it rendered the working of such farm inconvenient, and makes necessary the driving of teams, tools and equipment from one side of said highway to the other, and the only evidence to offset such decrease in value was by a part of the county witnesses who testified that the paved highway increased the market value of such farm enough to off-set the damages, but that such increase in value to such farm was common to all farms in that community and especially to those in close proximity to said highway. * * * "

The chief conflict in the testimony of the witnesses for the respective parties, as we view it, was over the question of whether the cutting of the farm into two small tracts, one of 30 acres and one of 58 acres, would decrease its market value. The testimony of appellants' witnesses was to the effect that two tracts of such small size could not be used or sold advantageously, either separately or as a single farm. Appellee's witnesses, for the most part, said that the remaining land would be worth as much per acre after the taking as before, but on cross examination admitted that in arriving at such an opinion they had included the benefits which would accrue to the land from the improved highway. It is the contention of appellants that all of the testimony, when carefully analyzed, showed without dispute that the remaining land would be worth less after the taking, excluding from consideration the benefits which would accrue to the community generally from the building of the highway. This might be said of much of the testimony given on behalf of appellee, but we are not prepared to hold that there was no evidence to support the verdict of the jury.

We must, under such an attack on the verdict, follow the general rule of examining the evidence in the light most favorable to the verdict. Most of the witnesses thought that the land could not be sold for as much per acre, when divided into two small tracts, as it could have been if left in one large tract. But one of appellee's witnesses testified positively that smaller tracts of land, when located on improved highways, could be sold at a greater price per acre than could a large tract. He said that there were more purchasers financially able to buy the small tracts than there were who could buy the larger ones. We cannot say as a matter of law that such an opinion was without probative value. It was also shown that the highway would be somewhat above the level of the surrounding land, and that it would act as a terrace and prevent excessive flow of water across the north portion of the land. Appellants' witnesses said that it would be disadvantageous to cultivate the land when the rows would be shortened by the division of the land into two tracts, but it was shown that the rows laid off during the current year ran parallel to the proposed highway, and would thus not be shortened. From the evidence the jury would have been warranted in believing either way as to the necessity of fencing the land along the new highway.

In our review of the present case we have again given careful study to the opinion in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, on rehearing, 89 S.W.2d 979. Under the rules announced in that case, we believe that there was evidence of probative force from which the jury could reasonably have concluded, first, that appellants' land suffered no depreciation in value as a result of being cut into two parts, and second, that if there was any damage so caused, such damage was more than offset by the benefits accruing peculiarly to this land other than those received in common with the community generally. The evidence regarding the questions of damage and benefits to the land was developed quite fully, and the witnesses, either on direct or on cross examination, or both, stated the bases of their respective opinions. The jury heard them, and under the law had a rather wide discretion in appraising the

opinions on value which were given by the witnesses.

We overrule the second point of error without discussing it further than to say that the questions raised under it appear to be settled by the opinion in State v. Carpenter, supra.

■ Under the third point error is charged in the refusal of the court to permit appellants to show the comparative effect of the highway on their land and its effect on an adjoining farm. Appellants' purpose was to demonstrate to the jury the comparative situations of a farm cut into two pieces by the highway, and that of a farm which was left in one piece. We think that the evidence was sufficiently developed to bring before the jury the complaint which appellants were making, and that, as a practical matter, the question of advantage or disadvantage in cutting the farm into two pieces was gone into time and again in the examination of the various witnesses. We do not see any reversible error in the ruling of the court in this particular.

One of appellee's witnesses was J. E. Riley. At one point in his testimony he was asked the following question, and answered as shown:

"Q. Do you know how many places there are from across the Lake over there to the Collin County line that contain as little as 30 acres along this new highway? A. No, I didn't check them. There was only a few of them that was contested, and that is all we had to deal with.".

Appellants immediately objected to the answer, and requested the court to instruct the jury not to consider it, and asked for a new trial on the ground that the answer inflamed the minds of the jury against appellants. The court overruled the objection.

■■ The fourth point of error, complaining of this, should be overruled, first, because the objection was made to the entire answer, whereas a part of the answer was responsive to the question asked and was admissible; and second, because the matter was not in any event of sufficient importance to require a reversal of the judgment.

■ The witness Riley was one of the special commissioners appointed to assess the damages to appellants' land. At the trial he testified that the land remaining after the taking was worth as much as it was before the taking. Appellants sought to show, for impeachment purposes, that Riley had joined in a report of the special commissioners which found some damage to the remaining land. It has been held that the report of the commissioners should not be taken into consideration by the jury for any purpose. Crystal City & U. R. Co. v. Boothe, Tex.Civ.App., 126 S.W. 700; Lower Colorado River Authority v. Burton, Tex.Civ.App., 170 S.W.2d 783. It was held to be reversible error in the last cited case for the landowners to read to the jury their petition which set out the amount of the commissioners' award and to refer to the amount of the award in oral argument to the jury.

■ The sixth point charges error in permitting the witness Riley to testify that houses, people and industries move to and follow the construction of highways. Any objection that might be made to this testimony would go to its weight rather than to its admissibility.

■ The seventh point charges error in the refusal of the court to permit appellants to show the reasonable value of an adjoining farm. A great deal of testimony was offered concerning values of property in this neighborhood, sales of this and other parcels of land, opinions of values, and the like. We are unable to see any reversible error in the action complained of under this point.

We have carefully examined all points of error, and especially under the rules of practice recommended in the opinion in State v. Carpenter, supra, we consider that we are not at liberty to set aside the verdict of the jury, and that the points charging procedural errors are not such as to merit a reversal of the judgment.

The judgment of the trial court is affirmed.