CURFMAN et al. v. STATE.

No. 14294.

Court of Civil Appeals of Texas. Dallas.

Feb. 23, 1951.

Second Rehearing Denied May 18, 1951.

Thos. R. Bond, Thomas H. Crofts and Jack P. Bond, all of Terrell, for appellants.

Carl Miller, County Atty., Rockwall, for appellee.

YOUNG, Justice.

The suit grows out of action taken by the State of Texas through the Commissioners' Court of Rockwall County to condemn a 200-ft. strip on and over the land of appellants in the relocation of U. S. Highway No. 67. The landowners duly filed objections to award of the Commissioners and, upon jury trial and verdict in County Court, were again dissatisfied, charging various errors for which new trial should be granted. They have in due course perfected this appeal; challenging not only the jury award and judgment under the evidence, but also validity of the entire proceedings.

The 160-acre tract of appellants (north part) is already traversed by the MK&T Railway, running generally east and west, all improvements thereon being located on north boundary line adjacent to a public road. The land condemned, a strip 200 x 2518 ft., comprising some 11.563 acres, likewise runs across from east to west in lower part of tract which is made up of cultivated lands, pasture and meadow, intersected by fences. Grade of the new highway, as appellants claim, will be from one to two feet above ground level, interfering with the north to south natural flow of surface water on said farm.

The jury found the reasonable market value of the land condemned for highway purposes to be $1,445.38 and that there was no decrease in market value in and to the remaining portion.

The pleading of defendant landowners, appealing to County Court from the decision of condemnation Commissioners, alleges various irregularities with respect to choice of Commissioners and their method of procedure whereby the attempted condemnation was void; complaining at length of no attempt by County officials to agree on values or opportunity given defendants to settle any differences before proceeding to condemn; that the reasonable value of the strip taken was greatly in excess of the amount offered by the County; the following amount of damages being claimed: Reasonable market value of strip taken, $2,312.60 (11.563 acres at $200 per acre); lessened value of adjacent land, not less than $2,875.00; cost of additional fencing

necessarily resulting from location of highway, $1,000; damage occasioned by change in natural flow of water over their land, $1,000.

Points of appeal may be thus summarized, viz.: Errors of the court (1) in refusing to sustain appellants' peremptory instruction because of no proof of any effort made on part of the County to agree with the landowners, prior to institution of condemnation proceedings, on value of land involved or damages that would be sustained thereby; (2) in permitting appellee to introduce in evidence before the jury the award of the condemnation Commissioners; (3) in permitting the introduction in evidence, over objection, of the statement signed by Carl Miller, appellee's attorney, that the Commissioners' Court had "offered said defendants the sum of ($1,445.37) Fourteen Hundred Forty Five & 37/100 Dollars for said land and for damage, if any there be due said defendants, which said sum is the reasonable market value of said property, and is in excess of the damages which would be incurred, if any there be, by running said Highway through defendants' land"; and the court should have sustained appellants' motion to either withdraw such evidence from consideration by the jury or declare a mistrial; (4) in permitting named witnesses to testify without proper qualification as to knowledge of values with reference to appellants' land (also to third party sales of land in the vicinity); (5) the jury verdict that adjacent land suffered no damage by reason of the Highway going through and that the value of the land taken was only $1,445.38, has no support in competent evidence; which evidence on the other hand fully supported a finding of $1,725 for the land taken and the damages to remaining land of not less than $20 to $25 per acre.

▇▇▇▇ Appellee's petition or statement in writing (first step toward condemnation, Art. 3264, Vernon's Ann.Civ.St.) followed the statute in allegations of inability to agree with landowners upon value of land or the damages. County Judge Lofland testified in such connection that W. N. Evans, right-of-way man relative to new Highway 67, had died prior to inception of these proceedings; that he (the witness) had written the Curfman heirs advising them of the maximum amount the County would pay for the land to be taken (no amount stated for damages in addition), receiving no replies; and had discussed the matter generally with Charles Curfman, administrator. Glen Curfman testified to receipt of the letter, but that he had made no effort to see Judge Lofland, as "* * * I was not seeking to sell the land"; Albert Curfman likewise testifying to receipt of the County offer to which he did not respond; and concerning later notices from condemnation Commissioners, that same were turned over to his attorney who told him not to appear. The foregoing is sufficient, we think, to satisfy the statutory requirement of an inability to agree on values and damages after a bona fide effort had been made by the party seeking to acquire the land. 16 Tex.Jur., Eminent Domain, secs. 117–180, pp. 731–816. There are cases where a failure to agree on value and damages has been made a fact issue; Malone v. City of Madisonville, Tex.Civ. App., 24 S.W.2d 483. Here, however, defendants did not except to an absence of a jury finding in such regard, merely requesting a peremptory instruction on ground of a total lack of evidence in that particular. In such state of the record the court was fully empowered to resolve the issue favorably to condemnor in the judgment rendered. Rodriguez v. Higginbotham-Bailey-Logan Co., Tex.Civ.App., 172 S.W.2d 991, writ refused.

Contrary to a point urged by appellants, the jury award was in evidence before the court for jurisdictional purposes only, as disclosed by the court's qualification to bill of exception No. 1. Appellee, however, did read to the jury on the trial its application for condemnation which contained allegations to effect that the County had offered a certain sum to defendants for their land and for damages "which said sum is the reasonable market value of said property, and is in excess of the damages which would be incurred * * *." As shown by similar qualification to bill of exception No. 2, the paper was thereafter placed in

the record for purpose of jurisdiction "and was not re-read to the jury, when offered in evidence."

The original statement or application in writing for condemnation required by Art. 3264 is considered the equivalent of an original petition on appeal to the County Court; and a landowner, in his objections to the award, may challenge its sufficiency as in any other civil action. "Thus he may urge the absence or deficiency of jurisdictional allegations or the presence of irrelevant and prejudicial matters therein, * * *." 16 Tex.Jur., p. 799, sec. 166. In absence of an exception which should have been made to the allegations in question as surplusage, appellants are in no position to complain; Rule 90, Texas Rules of Civil Procedure; the action of appellee being merely in conformity with further Rule 265, Texas Procedure, directing that "Plaintiff's petition shall be read to the jury."

Appellants in numerous bills of exception complain that, without proper qualification, the witnesses O. L. Stegar, Mason Gray, and R. L. Bourn were permitted to testify concerning value of the Curfman property and also of lands in the vicinity as follows: O. L. Stegar (abstracter and real estate man): "I know the Curfman land. In my opinion, just the land, I would say it would probably sell for $125 to $150 an acre if it was placed on the market for sale. Just the naked land. Q. What would be the difference in value in the remaining land before and after the highway goes through it? A. In my opinion land would be worth more after the highway goes through it. Q. How much more? A. Worth $10 to $25 an acre more because it is off the mud." Mason Gray: He had owned a farm about a half mile from Curfman's, selling it three years before and, over defendants' objection, answering that the sale was for "$100 per acre." R. L. Bourn: "Q. What is the reasonable fair market price of that (Curfman) land? A. $125 per acre was a good price for it. * * * Q. What in your opinion would be a reasonable fair market price of the remainder of the land before and after the highway goes through there? A. I think it would be worth more. * * * Q. In your opinion, how much more? A. Maybe $25 or $50 per acre more." This witness had owned a farm about one-fourth mile south of Curfman's land, selling it in 1945 at $65 per acre.

The testimony of these witnesses as a whole (direct and cross-examination) revealed sufficient knowledge of the property inquired about and of its value at the time and occasion in question; and in view of the rather flexible rule regarding opinion evidence of this character, we conclude that same was not subject to the objections made. It is the settled rule in Texas that where the adverse party has availed himself of his right to cross-examine a witness proposing to express an opinion on the issue of value, "he must make a showing of some strength before the court will hold the witness to be disqualified. Mere minor defects in the witness' qualification will not suffice to debar him, and objections based thereon go to the weight of the testimony rather than to its admissibility." 19 Tex. Jur., p. 217, sec. 141. See, also, pp. 218 and 235 of same text; Naegelin v. State, Tex.Civ.App., 153 S.W.2d 269. Neither was the testimony of contiguous property sales objectionable as remote. Joyce v. Dallas County, Tex.Civ.App., 141 S.W.2d 745.

Lastly, appellants press the point that the jury finding of no damage to the remaining land and of $1,445.38 for the land taken, has no support in evidence given at the trial. Thus assailed, the entire record must be examined; and while there is a preponderance of evidence adverse to the jury findings, their award has support in testimony of probative force. This is the test. Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575; Nowlin v. Denton County, Tex.Civ.App., 200 S.W.2d 865. All points of error are accordingly overruled and judgment of the trial court affirmed.

BOND, C. J., not sitting.

On Motion for Rehearing.

YOUNG, Justice.

Appellants urge a consideration of their point 10, asserting jury misconduct, in-

486

advertently omitted from brief on appeal. Bill of exception covering the additional point discloses that three of the panel testified concerning the issue on motion for new trial; Juror Irwin stating: "Yes, I believe I recall some one saying that no one else had received any damage to the remaining part of their land, * * *"; remembering that it was Juror Brown. Such statement was made during their deliberations on issue No. 2, but according to Irwin, it did not influence him in his answer thereto. Jurors Ansley and Boyd testified to no recollection of having heard the remark at all.

 Rule 327, Texas Civil Procedure, expressly imposes on a complaining party the burden of showing probability of injury, "because of any communication made to the jury or that they received other testimony * * *"; thereby abrogating the presumption of prejudice from jury misconduct as established by earlier Texas decisions. The trial court, in overruling appellants' motion for new trial, has impliedly held that either (1) the occurrence was not tantamount to misconduct within meaning of the Rule, or (2) it was reasonably doubtful that the verdict had been materially affected thereby. Such ruling has support in the evidence and is therefore binding upon this Court. Barrington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462; Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266; Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287.

Motion for rehearing is overruled.

BOND, C. J., not sitting.