Vincent Edward BAKER, Appellant,

v.

STATE of Texas, State.

No. 2–89–274–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 19, 1990.

Don E. Peavy, Sr., Law Office of Douglas and Peavy, Inc., Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Fort Worth, C. Chris Marshall, Asst. Crim. Dist. Atty., Chief of the Appellate Section, Terri Moore, Mike Jergins, Kevin W. Kapitan, Asst. Crim. Dist. Attys., for appellee.

Before JOE SPURLOCK, II, FARRIS and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellant, Vincent Edward Baker, was convicted in a trial to the jury of the offense of aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon 1989). Appellant was found guilty by the jury and punishment was assessed by the court at seventy-five years confinement in the Texas Department of Corrections.[1] In three points of error appellant claims that the trial court erred in overruling appellant's motion for mistrial, in allowing testimony of State witnesses not listed on the State's witness list over appellant's objections, and in denying appellant's motion for a directed verdict.

We affirm.

Complainant, L.M., arrived at Forest Ridge Apartments, an Arlington complex, around 1:00 a.m. on February 2, 1989, to pick up her three-month-old son from her sister-in-law. When L.M. made her required stop for clearance from the security guard, the guard, later identified as appellant, tricked her into entering the security gate office by appearing to call her sister-in-law. As L.M. picked up the phone, a recording told her to hang up her phone and try her call again. Appellant told her to go on through. As L.M. walked past him, he pushed her into her car telling her to "Get down. I'm going to kill you, bitch."

While L.M. attempted to struggle free, appellant held her down and drove the car west, out of the apartment complex. As he drove, appellant ordered L.M. to remove her panties, after which he reached over to touch her genitals. He later ordered her to perform oral sex on him and put his penis in her mouth. Appellant drove L.M.'s car throughout the assault. L.M. was repeatedly pushed back down and forced to continue performing oral sex on appellant.

In desperation, L.M. began shifting the gearshift console back and forth. Appellant continued to threaten her life. Eventually, L.M. was able to unlock the passenger door and force it open with her feet. As she struggled out of the car, appellant bit her on her thigh.

L.M. caught a ride and called the police. She was examined at Arlington Memorial Hospital and later provided a statement to the Fort Worth Police Department. Photographs of the bite marks were taken at the Tarrant County Medical Examiner's Office.

Shortly after the assault, appellant was videotaped at a convenience store near the place where L.M. escaped from her captor. Blood, not belonging to appellant, was found on his jacket. The bite mark on L.M.'s leg matched a bite impression taken from appellant and a latent fingerprint found in L.M.'s car matched a fingerprint taken from appellant.

In his first point of error, appellant complains that the trial court erred in overruling his motion for mistrial. The motion followed what appellant characterizes as a "highly inflammatory" outburst by L.M. during her testimony. The prosecutor had questioned L.M. in detail about how she initially met appellant. As the prosecutor continued his questioning, the exchange of which appellant complains occurred as follows:

1. Now the Texas Department of Criminal Justice, Institutional Division.

Q (By Ms. Moore) [L.M.], we've been saying he and the security guard. Let me just ask you outright: Do you see the person in this courtroom today that we're talking about?

A Yes.

THE COURT: Ladies and gentlemen, let's take a brief recess. Please retire to the jury room. Do not discuss the case at all. Please wait there until we call you back.

(The jury was retired to the jury room at 2:01 p.m., the witness was escorted out of the courtroom, and the following proceedings were held, outside the presence and hearing of the jury.)

THE COURT: Go ahead.

MR. PEAVY: Your Honor, we would respectfully move the Court for a mistrial. Without casting dispersions on the District Attorney's office, the outburst by the witness when she attempted to point out the Defendant was over dramatic. The witness had been on the stand for some time and had been looking at the Defendant and had not been harmed or bothered by that. This so-called spontaneous outburst at the time she was formally asked to identify the Defendant was an act calculated to prejudice and inflame the jury. We believe that that is so prejudiced and inflames the jury as to hamper the Defendant's right to a fair and impartial trial. On that basis, we would move the Court for a mistrial.

THE COURT: I'll deny the mistrial.

■ The decision to declare a mistrial is within the sound discretion of the court. *Smith v. State*, 638 S.W.2d 200, 202 (Tex. App.—Houston [1st Dist.] 1982, pet. ref'd—untimely filed). In reviewing such decisions, we may only determine whether the trial court abused its discretion. *McCoy v. State*, 713 S.W.2d 940, 955 (Tex.Crim.App.), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1986). Such a ruling may not be disturbed on appeal when the trial court's decision is supported by the record. *Self v. State*, 709 S.W.2d 662, 665 (Tex. Crim.App.1986).

Appellant contends that L.M.'s testimony violated the requirements of a fair trial under TEX.R.CRIM.EVID. 403 and that his motion for mistrial should have been granted pursuant to *State v. Berry*, 385 S.W.2d 711 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.).

Appellant's reliance upon *Berry* is somewhat confusing. *Berry* involved a civil condemnation case wherein improper testimony regarding a special commissioner's award was elicited and recorded in the record. *Id.* at 714. The *Berry* facts contrast sharply with those of the instant case.

The "inflammatory" nature of the outburst of which appellant complains is difficult to determine in the instant case considering that the record completely fails to describe it. Appellant also neglected to explain or indicate how this outburst affected the outcome of the trial.

Rule 403 of the Texas Rules of Criminal Evidence allows the exclusion of relevant testimony "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." TEX.R.CRIM.EVID. 403. The rule's approach admits relevant evidence unless the danger of unfair prejudice to the defendant substantially outweighs its probative value. *Crank v. State*, 761 S.W.2d 328, 342 n. 5 (Tex.Crim. App.1988).

■ It was appellant's burden to ensure that the activity of which he complains was made part of a complete record and any error was preserved for appeal. *See Garcia v. State*, 513 S.W.2d 559, 561–62 (Tex.Crim.App.1974) (error denied because nonverbal reference complained of not in record); *compare Hicks v. State*, 525 S.W.2d 177, 178–79 (Tex.Crim.App.1975) (reversal allowed where nonverbal comments complained of noted in record); TEX.R.APP.P. 50(d). It is appellant's duty to preserve error by specifically pointing it out to the trial court and ensuring its presence in the record. *Baldwin v. State*, 756 S.W.2d 91, 92 (Tex.Crim.App.1988). Because appellant neglected to describe, for the record, the error of which he complains,

appellant failed to preserve that error for review by this court.

For these reasons, appellant's first point of error is overruled.

In his second point, appellant argues that the trial court erred in allowing, over appellant's objection, testimony during rebuttal of witnesses not on the State's witness list. After the State presented its case-in-chief at the guilt-innocence stage, defense counsel indicated he did not intend to present any witnesses. The State then called two "rebuttal" witnesses. At this point the defense objected to the testimony of these witnesses because they were not proper "rebuttal" witnesses, and since their names were not listed on the State's witness list, their testimony came as a total surprise to the defense.

■ Appellant relies upon *Hightower v. State*, 629 S.W.2d 920, 925 (Tex.Crim.App. [Panel Op.] 1981) to support his position that witnesses should be disclosed if they will be used by the State at any stage in the trial. However, the true thrust of *Hightower* appears to have escaped appellant. Careful reading of *Hightower* reveals a standard by which the discretion of a trial court in such decisions is evaluated. *Id.* *Hightower* provides that a trial court's determination to allow the testimony of witnesses not included on a witness list will only be disturbed upon a showing of abuse of discretion. *Id.* Factors to be used in evaluating the use of such discretion include a showing of bad faith on the prosecutor's part and the defendant's ability to reasonably anticipate the calling of such a witness. *Id.* Unless it can be shown that the omission of a name from the State's witness list was a result of bad faith on the part of the prosecutor or that the calling of such a witness could not have reasonably been anticipated by the defendant, the trial court's decision to allow the testimony will not be disturbed on appeal. *Bridge v. State*, 726 S.W.2d 558, 566–67 (Tex.Crim. App.1986).

■ In the instant case, appellant challenges as error the testimony of Robert Green, the crime scene search officer; Frank Schiller, the director of the Fort Worth Crime Lab; and Billie Shumway, the forensic serologist.

The record shows that upon the court's direction a State witness list was provided, although appellant did not file a motion for discovery. The names of Green, Schiller, and Shumway were not on this witness list. Further, the State allowed appellant access to crime scene reports made in the instant case which contained Officer Green's name, thus making appellant aware that Officer Green might be called as a witness. Appellant was also given a lab report which indicated that someone from the crime lab, such as Frank Schiller, would testify at trial. Additionally, the prosecutor told appellant that the normal forensic serologist, Billie Shumway, was on vacation and that someone would be testifying as a custodian of records from the lab.

From the record, we cannot detect any showing of bad faith on the part of the prosecutor. It further appears from the facts that appellant could reasonably expect the appearance of such witnesses.

Appellant's second point of error is overruled.

In his final point of error, appellant asserts that the trial court erred in overruling his motion for an instructed verdict. More specifically, appellant complains that the State failed to prove all of the elements of an aggravated sexual assault. He argues that it was not proven that L.M. was placed in fear of imminent bodily injury or death as required by TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(ii).

In support of his argument, appellant points to the fact that appellant was not shown to have used a weapon or have inflicted serious bodily injury.

Appellant misreads § 22.021 of the Texas Penal Code which requires only *"acts"* or *"words"* (emphasis added) which place the victim in *"fear"* (emphasis added) of death or serious bodily injury. TEX. PENAL CODE ANN. § 22.021.

■ Although § 21.03(a)(2) (the predecessor of § 22.021(a)(2)(A)(ii)) required a showing that the acts or words of the ac-

cused which put the victim in fear of death or serious bodily injury caused the victim's submission, this causal connection is no longer necessary. *Alvarez v. State,* 767 S.W.2d 253, 257 (Tex.App.—Corpus Christi 1989, pet. ref'd).

 The elements of § 22.021(a)(2)(A)(ii) are now characterized as forming an "objective" standard. *See e.g. Kowey v. State,* 751 S.W.2d 587, 591 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); *Dacquisto v. State,* 721 S.W.2d 603, 604 (Tex.App.— Amarillo 1986, pet. ref'd); *Dodson v. State,* 699 S.W.2d 251, 254 (Tex.App.—Tyler 1985, no pet.). This standard requires the jury to first decide, on the basis of the victim's testimony, whether the element of fear required by the code existed. *Douglas v. State,* 740 S.W.2d 890, 891 (Tex.App.—El Paso 1987, no pet.). Secondly, the accused's actions are examined to determine whether they could in fact cause such fear. *Id.* Lastly, the jury determines if the victim's actual state of fear was "reasonable in light of the accused's conduct." *Id.*

In *Kowey,* the court reviewed all the evidence in applying the "objective" standard described above. *Kowey,* 751 S.W.2d at 591. Reviewing all the evidence in the instant case we see that at least twice appellant told the victim he would kill her. He forcefully abducted the victim in her own car and repeatedly physically restrained her from attempted escapes. Under oath the victim stated she was terrified throughout the attack which ended only after she leapt from a moving vehicle.

The record clearly reflects sufficient evidence to show L.M.'s fear of death or serious bodily injury was reasonable.

In reviewing the evidence, we must do so in a light most favorable to the verdict and determine that any reasonable trier of fact would have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866 (Tex.Crim.App.1988). Based upon the evidence described above, we find this standard has clearly been met.

For these reasons, appellant's third point of error is overruled. Therefore, the judgment of the trial court is affirmed.